**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NANCY L. KLAUS, | ) | CASE NO. 3:25-CV-01667-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF THE SOCIAL | ) | CARMEN E. HENDERSON |
| SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

### I. Introduction

Plaintiff, Nancy L. Klaus ("Klaus" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

### II. Procedural History

On November 2, 2020, Klaus filed an application for DIB, alleging a disability onset date of May 17, 2020.  (ECF No. 7, PageID #: 51). The application was denied initially and upon reconsideration, and Klaus requested a hearing before an administrative law judge ("ALJ"). (*Id.*).  On January 6, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (*Id.* at PageID #: 69-98). On March 2, 2022, the ALJ issued a written decision finding Klaus was not disabled.  (*Id.* at PageID #: 51-

1

64).  The ALJ's decision became final on January 6, 2023, when the Appeals Council declined further review.  (*Id.* at PageID #: 29-32).

Klaus appealed the ALJ's decision to this Court and, on the parties' stipulation, the Court remanded the matter for further proceedings.  (ECF No. 7, PageID #: 918).  Subsequently, the Appeals Council vacated the prior decision and remanded the matter to the ALJ to give further consideration to Klaus's residual functional capacity ("RFC") following proper consideration of various medical opinions.  (*Id.* at PageID #: 922-24).  After the remand, the ALJ held a second hearing on April 17, 2025, during which Klaus, again represented by counsel, and an impartial vocational expert again testified.  (*Id.* at PageID #: 868-89).  On May 6, 2025, the ALJ again issued a written decision finding Klaus was not disabled.  (*Id.* at PageID #: 836-55).

Klaus appealed the decision directly to this Court by filing her Complaint challenging the ALJ's decision on August 11, 2025.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 8, 9, 10).  Klaus asserts the following assignment of error: "[t]he ALJ failed to properly account for the social interaction limitations opined by the state agency mental health reviewing experts."  (ECF No. 8 at 2).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Klaus's hearings:

> The claimant is currently fifty-five years old, however she was fifty-two as of her date last insured. At the January 2022, hearing, she testified that she was able to stand for five minutes before her knees gave out on her, and she could sit for five to ten minutes. Additionally, the claimant testified that she had low back pain that radiated into her legs on a daily basis. She further testified that she was not taking any medication for pain, although she used ice packs, and physical therapy increased her pain. Regarding household chores, the claimant testified she could prepare meals and wash laundry; however, it took her longer to finish her chores.

Moreover, the claimant testified that she was unsure of her last seizure, although she drove two weeks prior to the hearing. Lastly, the claimant testified that she was not able to bend over or squat due to pain, and she had headaches that were not helped with her medication, that caused her to go into a dark room and lie down.

Additionally, at the most recent hearing, the claimant testified that, during the period from the alleged onset date through the date last insured, she was only able to be on her feet for about five minutes, due to pain. She further testified that she had issues with her balance during that period, and she would lose her balance, fall, and try to catch herself. The claimant testified that she required the use of a cane due to her balance issues. Moreover, the claimant testified that she had swelling in her knees, with numbness down into her toes, and it hurt to bend her knee. She testified that she had to elevate her legs multiple times per day. Regarding her psychological impairments, the claimant testified that she had problems with irritability and concentration, and she would lose focus on her tasks. Lastly, the claimant testified that her pain made it difficult to concentrate on the job.

(ECF No. 7, PageID #: 844-45).

## B. Relevant Medical Evidence

The ALJ also summarized Klaus's health records and symptoms:

Prior to the alleged onset date, the claimant underwent an EEG on May 7, 2019, which was abnormal due to the presence of epileptiform discharges. (Ex. 1F pg. 18). Ali Almudallal, M.D., saw the claimant on January 20, 2020, she stated that she had been doing well. (Ex. 1F pg. 16). Physical exam demonstrated a normal gait, and no neurological deficits. (Ex. 1F pg. 17).

Additionally, the claimant had a lumbar spine CT scan on December 2, 2019, which revealed anterolisthesis of L4 on L5 with moderate spinal stenosis and bilateral L4 nerve root impingement, mild degenerative disc disease at L4-5, facet joint degenerative joint disease at L4- S1, and multilevel annular bulges with mild to moderate spinal stenosis at L3-4. (Ex. 1F pg. 78).

On July 30, 2020, the claimant was seen by Wendy Shutler, CNP, and reported increased fatigue as she was the main caregiver for her husband and daughter. (Ex. 1F pg. 15).

Paige Leopold, CNP, saw the claimant on August 21, 2020, and

3

stated that she was doing well. (Ex. 1F pg. 12). She denied any new events, she was compliant with her medication, and Ms. Leopold continued the claimant's Keppra. (Ex. 1F pgs. 12, 14).

On December 29, 2020, an updated EEG was normal, with no evidence of epileptiform activity. (Ex. 4F pg. 7).

The claimant followed up with Paige Leopold, CNP, on January 4, 2021, and reported improvement in her staring spells since November 2020. (Ex. 4F pg. 5). Additionally, she denied any other seizure or episode of confusion. (Id.). Her exam revealed normal respiratory effort, normal cervical range of motion, and no neurological deficits. (Ex. 4F pgs. 7, 8). Additionally, she had a normal affect and no hallucinations. (Ex. 4F pg. 8). The claimant denied side effects of her medication and was continued her Keppra. (Id.).

Robert Steiner, M.D., saw the claimant as a new patient on August 5, 2021, secondary to bilateral knee pain that she rated 6/10 on the pain scale. (Ex. 7F pg. 11). His exam revealed bilateral tenderness along the medial, and patellofemoral joints, intact sensation, normal muscle strength, and significant patellofemoral crepitus. (Ex. 7F pg. 13). X-rays found moderate degenerative changes and medial joint space narrowing. (Id.). Dr. Steiner referred the claimant for bilateral knee MRI scans, which found moderate degenerative arthrosis of the left knee, mild degenerative arthrosis of the right knee, and no evidence of medial or lateral meniscus tear. (Ex. 7F pgs. 4, 8, 9, 14). On August 31, 2021, the claimant saw Dr. Steiner, due to bilateral knee pain. (Ex. 7F pg. 2). Physical exam showed a mildly positive straight leg raise test, no knee effusion, intact sensation, and normal muscle strength. (Ex. 7F pg. 4). Dr. Steiner referred the claimant for an MRI, and x-rays of her lumbar spine. (Ex. 7F pg. 5).

Paige Leopold, CNP, followed up with the claimant on September 20, 2021, and she noted that the claimant's neurological exam was grossly intact, with no focal deficits, normal muscle strength, and intact sensation and gait. (Ex. 8F pg. 6). Furthermore, the claimant stated that she was doing well and denied episodes of seizure or confusion, and Ms. Leopold continued the claimant's medications. (Ex. 8F pg. 7).

The claimant was seen by Tricia Stoker, CNP, on September 30, 2021, and she reported neck and back pain. (Ex. 9F pg. 6). Her exam revealed normal range of motion, lumbar spine tenderness with palpation, and no neurological deficits. (Ex. 9F pg. 7).

Additionally, her behavior, thought content, and judgment were normal. (Id.). Following her exam, Ms. Stoker referred the claimant to an orthopedic surgeon. (Ex. 9F pg. 8).

The claimant received Cortisone injections in her bilateral knees on January 3, 2022. (Ex. 11F pg. 12). On February 14, 2022, the claimant followed up with Amanda Hefner, M.D., and rated her bilateral knee pain 5/10 on the pain scale. (Ex. 11F pg. 8). Additionally, the claimant stated that her pain was constant, and she had feelings of instability. (Id.). Her exam demonstrated negative straight leg raise testing, painful range of motion, joint line tenderness, mild effusion, and an antalgic gait. (Ex. 11F pg. 10). X-rays of the lumbar spine revealed spondylolisthesis of L4 on L5, spondylolysis of L3-5, and mild degenerative scoliosis. (Id.). Dr. Hefner referred the claimant for a lower extremity EMG, as well as an MRI of the lumbar spine. (Id.). On March 3, 2022, the claimant underwent an EMG, which showed chronic left L5 radiculopathy, although there was no active denervation in any muscle sampled, and no evidence of lumbosacral plexopathy or peripheral neuropathy. (Ex. 10F pg. 3). Dr. Hefner followed up with the claimant on March 16, 2022, and referred the claimant to pain management. (Ex. 11F pg. 4). Her exam at that time again found an antalgic gait, mild effusion, negative straight leg raise testing, and joint line tenderness. (Ex. 11F pg. 3).

Matthew Nienberg, PA-C, saw the claimant on March 29, 2022, and she rated her low back and knee pain 9/10 on the pain scale. (Ex. 12F pg. 39). Physical examination noted appropriate attention, no deficits in memory, minimal edema, and lumbar spine tenderness. (Ex. 12F pg. 40). Additionally, the claimant had decreased, and painful, range of motion, with mildly positive facet loading, normal muscle strength, no sensory deficit, negative straight leg raise testing, and an antalgic gait. (Ex. 12F pg. 41).

(ECF No. 7, PageID #: 845-46).

### IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1.  The claimant last met the insured status requirements of the Social Security Act on March 31, 2022.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 17, 2020, through her date last insured of March 31, 2022 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, with anterolisthesis of L4 on L5 and left L5 radiculopathy into the left lower extremity; epilepsy; bilateral knee osteoarthritis, status post left knee arthroscopy; right knee chondromalacia of the patella with effusion; and psychological conditions variously described as: borderline intellectual functioning (BIF); other depressive disorder/recurrent brief depression; and anxiety disorder with limited symptoms attacks. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds or crawl and can occasionally climb ramps and stairs, balance, crouch, kneel, and stoop. She must be able to alternate positions, at her option, every 30 minutes for 1-2 minutes so long as she is not off task or has to leave the vicinity of the workstation. With the bilateral lower extremities, she can occasionally push and/or pull or operate foot controls. She can have occasional exposure to vibrations. She cannot work around unprotected heights, unprotected moving mechanical machinery, heavy machinery, or around areas where she will be exposed to large bodies of open water (or where swimming is required), open flames, or sharp unprotected implements. She cannot operate heavy equipment or machinery or perform any occupational driving. The claimant can engage in simple tasks but not at a production rate pace such as required working on an assembly line. She can make judgments on simple work, respond appropriately to usual work situations where duties are generally stable and predictable, and handle occasional changes in a routine work setting that are explained in advance and implemented such that she can adjust her performance to meet new task criteria and/or requirements. She cannot perform work that requires a daily production quota, i.e., piecework, but can perform goal-oriented work and meet end of day production requirements. She can have occasional interaction with the general public, supervisors, and coworkers. However, with the general public and coworkers, her

6

interaction should be superficial in nature defined as the ability to exchange greetings and engage in casual conversation although work-related interactions should be of short duration for a specific purpose such as work-related exchanges. Further, with the general public and coworkers, she cannot engage in tasks that require persuasion or conflict resolution.

6.  The claimant has no past relevant work (20 CFR 404.1565).

…

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 17, 2020, the alleged onset date, through March 31, 2022, the date last insured (20 CFR 404.1520(g)).

(ECF No. 7, PageID #: 839-40, 843-44, 853-54

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v.*

*Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at \*2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Klaus raises a single issue on appeal: "[t]he ALJ failed to properly account for the social interaction limitations opined by the state agency mental health reviewing experts."  (ECF No. 8

8

at 2).

Additional background concerning the proceedings to date is helpful in considering the parties' arguments. On initial review of Plaintiff's DIB application, State agency psychological consultant Dr. Audrey Todd concluded Plaintiff could "interact with others superficially." (ECF No. 7, PageID #: 107). At the reconsideration level, consultant Dr. Cynthia Waggoner concluded Plaintiff was "capable of interacting with others in a superficial manner" and "would perform well in an environment w/ only occasional public interaction." (*Id.* at PageID #: 117). In her March 2022 decision, the ALJ found Dr. Todd's opinion "somewhat persuasive, as the term superficial interaction is not defined." (*Id.* at PageID #: 62). The ALJ also found Dr. Waggoner's opinion "less persuasive than the opinion of Dr. Todd, as the file does not support limiting the claimant to only occasional interaction with the public." (*Id.*). In crafting the RFC, the ALJ concluded Plaintiff retained the ability to "interact with the general public, supervisors, and coworkers but cannot engage in conflict resolution or persuasion." (ECF No. 7, PageID #: 57).

After this Court remanded the matter for further proceedings, the Appeals Council entered a remand order in which it observed that the ALJ did not adopt the limitation to only superficial interactions with others in the RFC "despite noting these findings to have some persuasive value" and failed to provide an explanation for why the superficial interaction limitation was not adopted. (ECF No. 7, PageID #: 923). The Appeals Council explained that "[s]uperficial interactions speak to the quality and depth of interactions that would be distinct from the residual functional capacity's limits of no conflict resolution or persuasion." (*Id.*).

Turning to the current May 2025 decision, the ALJ again considered the opinions of Drs. Todd and Waggoner. As to Dr. Todd's opinion, the ALJ explained:

> The limitation for superficial interaction with others is not entirely consistent with the record. Testing performed by Dr. Wuebker showed that her verbal comprehension index and her full-scale IQ suggested that she might experience difficulty keeping up with her peers in multiple situations, including situations that required verbal skills. (Ex. 6F pg. 8). However, the claimant's mood was not depressed and her affect was appropriate during the examination. (Ex. 6F pg. 5). At the hearing, the claimant testified that she did not have issues with clerks when she went to the store. Furthermore, there is no evidence that the claimant had issues with medical providers and the evidence did not show any significant issues in communicating at her hearing or with the consultative evaluator. In her function report, she stated that she did not have any problems in getting along with family, friends, neighbors, or others (Ex. 4E pg. 5). This supports the limitation for superficial interaction with co-workers and the public (although not defined by the State Agency consultant) but not with supervisors. These records further support limiting the claimant to occasional interaction with supervisors, co-workers, and the public.

(*Id.* at PageID #: 851). The ALJ also provided the following explanation concerning Dr. Waggoner's opinion:

> At the reconsideration level, Dr. Waggoner concurred with the findings of Dr. Todd, however, she further found that the claimant would perform well in an environment with only occasional public interaction. (Ex. 3A pgs. 7, 8). The undersigned has considered this prior administrative medical finding and concludes that it is somewhat persuasive. This finding is supported by the detailed summary and analysis of the evidence reviewed, including the consultative examination. (Ex. 3A pg. 5). These findings are not entirely consistent with the evidence in the file. His finding that the claimant could only occasionally interact with the public is persuasive. This is consistent with the testing from Dr. Wuebker that showed that she might experience difficulty keeping up in situations that required verbal skills. (Ex. 6F pg. 8). The limitation for superficial interaction with others is not entirely consistent with the record. Testing performed by Dr. Wuebker showed that her verbal comprehension index and her full-scale IQ suggested that she might experience difficulty keeping up with her peers in multiple situations, including situations that required verbal skills. (Id.). However, the claimant's mood was not depressed and her affect was appropriate during the examination. (Ex. 6F pg. 5). At the hearing, the claimant testified that she did not have issues with clerks when she went to the store. This supports the limitation for

> superficial interaction with co-workers and the public (although not defined by the State Agency consultant) but not with supervisors. These records further support limiting the claimant to occasional interaction with supervisors, co-workers, and the public.

(*Id.* at PageID #: 852).  Ultimately, the ALJ included limitations to only occasional interaction with the general public, supervisors, and coworkers but clarified that interaction with the general public and coworkers "should be superficial in nature defined as the ability to exchange greetings and engage in casual conversation although work-related interactions should be of short duration for a specific purpose such as work-related exchanges." (*Id.* at PageID #: 844).

Plaintiff asserts that while the ALJ did not adopt the opinions of the State agency psychologists, the ALJ "clearly found the [superficial interaction] limitation to be necessary, as the ALJ limited [Plaintiff] to superficial interaction with coworkers and the general public." (ECF No. 8 at 5).  Plaintiff argues, however, that the ALJ "arbitrarily defined the term without any explanation as to how she arrived at such a definition," which was "contrary to other evidence in the record that the ALJ cursorily dismissed." (*Id.* at 5-6).  Additionally, Plaintiff argues that "the ALJ failed to comply with the remand order that explained that a limitation to superficial interaction spoke to the quality and depth of interactions." (*Id.* at 6).  Citing *Mabry-Schlicher v. Commissioner of Social Security*, No. 24-3811, 2025 WL 1604376 (6th Cir. June 6, 2025),[1] wherein the Sixth Circuit "upheld the ALJ's definition [of superficial] as the claimant failed to offer any argument as to why the specific limitations included by the ALJ were unsupported by substantial evidence or otherwise unreasonable," Plaintiff argues her case is

---

[1] Plaintiff cites this case as *Dawn M. v. Comm'r of Soc. Sec.*, 2024 U.S. Dist. LEXIS 133382 (6th Cir. June 6, 2025), improperly combining the name of the case in the district court and citation to the district court's opinion with the date of the Sixth Circuit's decision.  The undersigned presumes Plaintiff intended to cite to the Sixth Circuit decision.  Plaintiff's counsel is cautioned to take care to avoid such mistakes, especially in an age where the increasing use of artificial intelligence is causing courts across the country to more closely scrutinize briefing before them.

distinguishable because she provided a competing definition of superficial from the Appeals Council in a separate proceeding and the ALJ dismissed the definition without considering it. (*Id.* at 8-9).

The Commissioner responds that the ALJ accounted for Plaintiff's social limitations in the RFC and substantial evidence supports the ALJ's decision.  (ECF No. 9 at 4).  The Commissioner argues the ALJ "defined 'superficial' because there is no regulatory definition of the term and the state agency psychologists Dr. Waggoner and Dr. Todd did not define the term."  (*Id.* at 5).  The Commissioner also argues the ALJ complied with the remand order because "[i]n addition to noting that Plaintiff could not engage in tasks that require persuasion or conflict resolution, … the ALJ addressed the quality and depth of the interaction by limiting Plaintiff to superficial interaction with coworkers and the public," which she specifically defined.  (*Id.* at 7).

Plaintiff replies that the Appeals Council, "on two separate occasions now … noted that a limitation to 'superficial' interaction spoke to the quality and depth of interactions one could sustain" but the ALJ "willfully ignored this evidence, attempting to keep it out of the record as something that was irrelevant."  (ECF No. 10 at 3).  Plaintiff argues "the ALJ did not have to accept the definition, but the ALJ could not continue to turn a blind eye to what constituted a limitation to 'superficial' interaction with others."  (*Id.*).

In *Mabry-Schlicher*, which Plaintiff relies on in support of her argument, a district court concluded an ALJ's rejection of a superficial limitation because the term was "vocationally irrelevant" and "vocationally undefined" was an error.  2025 WL 1604376 at *2.  The court explained that "the limitation [was] both well-defined in the Social Security context and highly relevant to a claimant's vocational profile."  *Id.*  "The court further determined that limiting

12

Marby-Schlicher to 'occasional' interaction with coworkers and supervisors failed to address the 'superficial' limitation because 'occasional' and 'superficial' are distinct terms, with the former referring to quantity of interactions and the latter referring to quality of interactions." *Id.* Thus, the district court remanded the case to the ALJ for further proceedings.

On remand, the ALJ adopted the superficial limitation but defined such as "retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice." *Id.* Mabry-Schlicher appealed to the district court and, after that court affirmed, to the Sixth Circuit, arguing that "the ALJ's analysis of the superficial contact limitation failed to comply with the district court's remand order and was impermissibly narrow." *Id.* at *4. The Sixth Circuit concluded the ALJ's decision did not conflict with the remand order because "[t]he remand order did not provide a precise definition or enumerate specific criteria to satisfy a 'superficial' contact limitation" but rather clarified that superficial interaction is distinct from occasional interaction. *Id.* The Sixth Circuit determined the ALJ recognized this distinction when he included social restrictions related to the quality and character of social interaction in his definition of superficial. *Id.* The Sixth Circuit also rejected Marby-Schlicher's argument that the ALJ erred in adopting a definition that was narrower than the reviewing psychologists' opinions, noting that "an ALJ is not required to adopt a psychologist's limitations wholesale," the reviewing psychologists never elaborated on the meaning of the term in their opinions, and "[l]acking extensive guidance, the ALJ delineated specific social restrictions based on his understanding of what a 'superficial' contact limitation require[d] in this context." *Id.* at *5. Because Mabry-Schlicher did not "offer developed

13

argumentation that any of the[] specific restrictions [were] unsupported by substantial evidence or otherwise unreasonable," the Sixth Circuit found no error.

Here, as in *Marby-Schlicher*, the Appeals Council did not provide a specific definition of superficial but rather clarified that because "[s]uperficial interactions speak to the quality and depth of interactions," the initial RFC's limitation to no conflict resolution or persuasion did not account for a superficial interaction limitation. (ECF No. 7, PageID #: 923). Further, the ALJ's current definition of superficial "as the ability to exchange greetings and engage in casual conversation" with work-related interactions further limited to "short duration for a specific purpose such as work-related exchanges" addresses the quality of interactions rather than just the quantity. (*Id.* at PageID #: 844). Thus, as in *Marby-Schlicher*, the ALJ did not fail to comply with the remand order.

Additionally, the ALJ's definition of superficial is supported by substantial evidence. As noted by the ALJ, the State agency reviewers did not define the term. (*See* ECF No. 7, PageID #: 107, 117). Throughout her decision, the ALJ noted Plaintiff's reports that she did not have any issues with fellow customers or clerks at the store and she talked to family and friends on the phone; reports from Plaintiff's consultative examination that she was cooperative, maintained adequate eye contact, and "exhibited no attitudes of behaviors that would suggest difficulty getting along appropriately with co-workers or supervisors"; and the lack of evidence that Plaintiff had issues with medical providers. (ECF No. 7, PageID #: 842, 849, 851). This evidence supports the ALJ's definition of superficial interactions.

The only "evidence" Plaintiff points to in support of an alternative definition is an Appeals Council order from a separate case. (ECF No. 8 at 7-8; *see* ECF No. 8-1). In that order, the Appeals Council indicated that "'superficial interaction' is a term that is readily defined,

14

understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others."  (ECF No. 8-1 at 4).  In her decision, the ALJ here acknowledged Plaintiff's submission but explained that "a decision from the Appeals Council from another case has zero bearing on the merits of the instant case as an Appeals Council's decision has no bearing or precedential authority on any case other than the case addressed in its decision."  (ECF No. 7, PageID #: 849).

As an initial matter, the ALJ's explicit reference to the unrelated decision contradicts any argument by Plaintiff that the ALJ wholly failed to consider the decision. Rather, the ALJ rejected the decision and instead evaluated the case based on the evidence relevant to Plaintiff. Further, while Plaintiff characterizes the order as evidence and asserts that she submitted it "to provide a basis for a specific definition for the term superficial interaction," the order at best amounts to authority in support of an argument. However, Plaintiff wholly fails to cite any case law or regulations that would require the ALJ here to consider a definition from a separate, unrelated case in determining Plaintiff's RFC. (*See* ECF No. 8 at 7-8).

Even if the Court were to assume without deciding that the ALJ erred in not considering the definition from the unrelated order, there is no indication that such prejudiced Plaintiff because this definition—as in *Marby-Schlicher* and the Appeals Council decision in this case— simply clarified that superficial addresses the quality rather than quantity of interactions and, as discussed above, the ALJ used terms addressing the quality of interactions in defining superficial here.  Further, to the extent Plaintiff is arguing superficial should have been defined as no "more than shallow or cursory interactions with others," this definition is not clearly inconsistent with the ALJ's definition of superficial as "the ability to exchange greetings and engage in casual

15

conversation." Even if the ALJ erred in failing to consider the alternative definition, because substantial evidence supported the definition adopted, any error was harmless and does not warrant reversal.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Klaus's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: April 27, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).